**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SERGEI KUROEDOV,

Petitioner,

v. No. 1:26-cv-01162-DHU-JHR

GEORGE DEDOS, in his official capacity as Warden of Cibola County Correctional Center; JOEL GARCIA, in his official capacity as Acting El Paso Field Office Director of the Enforcement and Removal Operations of Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director of the Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; and TODD BLANCHE, in his official capacity as Acting Attorney General of the United States,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner Sergei Kuroedov's Petition for Writ of Habeas Corpus ("Petition") Doc. 3. Petitioner alleges that he was unlawfully re-detained by U.S. Immigration and Customs Enforcement ("ICE") after previously being paroled into the United States to seek lawful status, in violation of the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 79-85.[1] He requests that the Court order Respondents to immediately release him or, in the alternative, order them to provide him with a bond hearing. *Id.* at 37. Having carefully considered

[1] Petitioner also argues that Respondents have failed to follow their own policies, and have subjected him to prolonged detention, also in violation of the Due Process Clause. *Id.* ¶¶ 68-78. However, because the Court is granting Petitioner's Petition on his parole-related claim, the Court "declines to address the[se] remaining claims of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

the parties' briefs, the record, and the relevant law, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus.

## I.
## BACKGROUND

1. Petitioner is a native and citizen of Russia. *Id.* ¶ 17.
2. In December 2015, Petitioner entered the United States at the San Ysidro Port of Entry in California where he expressed his fear of returning to Russia and his desire to seek asylum. *Id.* ¶ 19. Petitioner remained in custody pending a Credible Fear Interview.
3. On January 7, 2016, Petitioner was provided with a Credible Fear Interview, where an asylum officer found that he had established a credible fear of persecution in Russia. *Id.*
4. On January 20, 2016, the U.S. Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear initiating removal proceedings. Doc. 9-1 at 1. His Notice to Appear charged him as an "arriving alien." *Id.* The Notice to Appear also stated that it was "being issued after an asylum officer ha[d] found that [Petitioner] ha[d] demonstrated a credible fear of persecution or torture." *Id.* The Notice to Appear also included a credible fear worksheet. *Id.*
5. On March 14, 2016, ICE informed Petitioner that he would be released on parole, 8 U.S.C. § 1182(d)(5)(A), "under parole conditions including paying a parole bond of $7,500.00." Doc. 3-3 at 1; Doc. 3-4 at 1. In granting Petitioner's parole, ICE found that he "established his [] identity" and "pose[d] neither a flight risk nor danger to the community." Doc. 3-3 at 1. The next day, Petitioner paid the bond, and ICE subsequently released him on parole.[2]

---

[2] Respondents allege that Petitioner breached bond when he failed to appear at immigration court on December 18, 2019. Doc. 9 at 2 (citing Doc. 9-3). However, Respondents fail to mention that ICE subsequently issued a "Notice of Bond Breach Reconsideration Decision," on February 19,

Doc. 3-4 at 1. Petitioner's parole remains valid until "completion of immigration removal proceedings." *Id.*

6. After being paroled, Petitioner established a life in the United States. He learned English. Doc. 3 ¶ 23. He lived with his wife and became a father to two U.S. citizen children. *Id.*
7. Petitioner filed an Application for Asylum, Withholding of Removal, and Withholding Under the Convention Against Torture ("CAT"). *Id.* ¶ 22. He was granted an Employment Authorization Document ("EAD"), better known as a work permit, and a Social Security number. *Id.* He worked. *Id.* ¶ 23.
8. Petitioner also attended all of his ICE appointments and immigration court hearings. *Id.*
9. On May 29, 2025, ICE arrested Petitioner while he was walking from his home to his car and subsequently took him into custody. *Id.* ¶ 25. ICE initially detained Petitioner at Delaney Hall Detention Facility in Newark, New Jersey, where he requested a bond hearing before an Immigration Judge ("IJ"). *Id.* ¶ 26. On June 12, 2025, IJ Shana Chen found that Petitioner was ineligible for bond under *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), or, alternatively, due to Petitioner's arrest in 2016 for extortion. Doc. 9-4 at 1.
10. On June 16, 2025, ICE transferred Petitioner to the Cibola County Correctional Center in Milan, in New Mexico, where he remains in custody. Doc. 3 ¶ 27.
11. On December 1, 2025, IJ Samuel Williams denied Petitioner's Application for Asylum but granted his Application for Withholding of Removal and for Withholding of Removal Under the CAT. Doc. 3-8 at 1.

---

2020, in which the agency determined that the initial decision was based on "administrative error" and reinstated Petitioner's bond. Doc. 10-1 at 1.

12. On December 19, 2025, DHS appealed IJ Williams' grant of Withholding of Removal and Withholding Under the CAT. Doc. 3-9 at 24. Petitioner filed a cross appeal of IJ Williams' denial of his Application for Asylum. Doc. 3 ¶ 30. Both appeals remain pending.

Petitioner subsequently filed the instant Petition. In the Petition, Petitioner alleges that his re-detention and revocation of parole violates his due process rights. *Id.* ¶¶ 79-85. Petitioner argues that his re-detention occurred while his parole remained valid and that he was, therefore, entitled to procedural process. *Id.* ¶ 83. He further argues that there was no material change in circumstances to justify his detention. *Id.* ¶ 84. He requests a Writ of Habeas Corpus ordering Respondents to immediately release him or, alternatively, ordering Respondents to provide him with a bond hearing. *Id.* at 37. Petitioner also requests attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *Id.* at 38.

Respondents filed a response, arguing that, as an "arriving alien," Petitioner has been provided all of the due process provided by statute. Doc. 9 at 1-2, 8.[3]

Petitioner filed a reply, arguing that he is entitled to release under the Due Process Clause or, at a minimum, a bond hearing. Doc. 10 at 11-14.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that his re-detention and revocation of parole violates the Due Process Clause.

---

[3] In their response, Respondents also argue that the Court lacks jurisdiction to review Petitioner's Petition because he must appeal IJ Chen's bond decision before seeking review of that decision. *Id.* at 1, 6-7. Petitioner, however, is not asking the Court to review IJ Chen's decision. He is asking the Court to review whether his re-detention and revocation of parole violates the Due Process Clause. Doc. 3 ¶¶ 79-85. The Court, therefore, finds Respondents' argument inapplicable and unavailing.

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

### A. Petitioner Is An "Arriving Alien" and His Detention Is Governed By 8 U.S.C. § 1225(b)(1)

Petitioner entered the United States at the San Ysidro Port of Entry and is, therefore, an "arriving alien." *See* Doc. 3 ¶ 19; Doc. 3-2 at 1 (where Petitioner's Notice to Appear charged him as an "arriving alien"); *see also* 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry."). As an "arriving alien," Petitioner's detention is governed by § 1225(b)(1). Specifically, before his parole, Petitioner was subject to mandatory detention under § 1225(b)(1)(B)(ii), which states that noncitizens seeking asylum who have passed a credible fear interview "shall be detained for further consideration of" asylum.

Under § 1182(d)(5)(A), a noncitizen classified as an "arriving alien," such as Petitioner, may be "temporarily released [into the United States] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288, 138 S.Ct. 830 (2018). The noncitizen's classification, however, does not change even if he is paroled, and even after such parole is terminated or revoked. *See* 8 C.F.R. § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)], and even after any such parole is terminated or

revoked.”). Accordingly, the Immigration and Nationality Act’s (“INA”) implementing regulations provide that § 1225(b)(1)(B)(ii) continues to apply even if that noncitizen is paroled, and even after such parole is terminated or expires. Indeed, the regulations specifically provide that, when parole is terminated or expires, the noncitizen “shall be restored to the status that he [] had at the time of parole.” 8 C.F.R. § 212.5(e)(2)(i).

**B. Petitioner Did Not Receive Adequate Written Notice Terminating His Parole**

Petitioner argues that Respondents seemingly revoked his valid parole when he was re-detained in May 2025, in violation of his due process rights. Doc. 3 ¶ 83.

Under 8 U.S.C. § 1182(d)(5)(A), a noncitizen classified as an “arriving alien,” such as Petitioner, may be released on parole on a “case-by-case basis for urgent humanitarian reasons or significant public benefit.” The noncitizen must be returned to the custody he was in “when the purposes of such parole . . . have been served.” *Id.* Parole automatically terminates when the parole period expires or when the noncitizen departs the United States. 8 C.F.R. § 212.5(e)(1). If parole does not automatically terminate, then, if the purpose for the parole is accomplished or a designated official determines that “neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States, parole shall be terminated upon written notice to the [noncitizen].” *Id.* § 212.5(e)(2)(i).

The service of a charging document on the noncitizen may constitute sufficient written notice to terminate parole. *Id.* A charging document is defined as a “written instrument which initiates a proceeding before an” IJ. 8 C.F.R. § 244.1. This includes only “a Notice to Appear, a Notice of Referral to [IJ], and a Notice of Intention to Rescind and Request for Hearing by Alien.” *Id.*

Here, the Court finds that Petitioner's parole was not terminated with sufficient written notice. Respondents did not serve Petitioner with a Notice to Appear, Notice of Referral, or a Notice of Intention when they re-detained him. Respondents only served on Petitioner a Form I-200 Warrant. Doc. 3-6 at 1. A Form I-200 Warrant is not a charging document, as it does not initiate proceedings before an IJ.[4] *See id.* Additionally, the Form I-200 Warrant did not inform Petitioner that his parole was being terminated *See id.* Accordingly, Petitioner's parole was not properly terminated when he was re-detained.

**C. Respondents' Failure to Provide Petitioner Adequate Written Notice Violates His Procedural Due Process Rights**

Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

**1. Petitioner Possesses a Sufficiently Protected Liberty Interest**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. However, under the "entry fiction," noncitizens "who arrive at ports of entry—even those paroled

---

[4] The Court also notes that a Form I-200 Warrant is only proper for arrests made pursuant to 8 U.S.C. § 1226. The INA and its implementing regulations confirm as much. *See* § 1226(a) ("On a warrant issued by the Attorney General, a [noncitizen] may be arrested and detained pending a decision on whether [he] is to be removed from the United States."); 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the [N]otice to [A]ppear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of [a] Form I–200 [] Warrant.").

elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139, 140 S.Ct. 1959 (2020) (internal quotation marks omitted). This is because such noncitizens cannot be said to have "effected an entry" into the country, *Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001), so the only due process rights afforded to them are the "minimal procedural due process rights for an opportunity to be heard at a meaningful time and in a meaningful manner," *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012). Beyond this procedural minimum, to create a liberty interest, a statute or regulation must "substantively limit the exercise of official discretion through specifically defined criteria that limit decision making." *Sosa-Valenzuela*, 692 F.3d at 1112.

Here, 8 C.F.R. § 212.5(e), a regulation, specifically limits termination of parole to two situations: 1) automatic termination upon the noncitizen's departure from the United States or the expiration of his parole; or 2) written notice. Petitioner's parole was not automatically terminated because he did not depart the United States, and his parole was active when he was re-detained. Thus, in accordance with the regulation, Petitioner's parole needed to be terminated upon written notice. As discussed above, Petitioner did not receive adequate written notice terminating his parole prior to being re-detained, nor even thereafter. Therefore, Petitioner possesses a sufficiently protected liberty interest.

**2. Written Notice Was Required Before Petitioner Was Re-Detained**

Having found that Petitioner possesses a sufficiently protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action,"

2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, even assuming that Petitioner's protected liberty interest only extends as far as Congress granted by regulation, Petitioner still has a significant interest in his parole being terminated in accordance with regulatory procedures. Termination upon written notice to him after one of the specified determinations in 8 C.F.R. § 212.5(e)(2)(i) is his only procedural safeguard. *See United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (10th Cir. 1980) (holding that because the "requirement of written notice is the only safeguard . . . written notice is essential to effectuate a termination").

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here, where Petitioner was not provided any adequate written notice, his only procedural safeguard.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Requiring Respondents to adhere to Petitioner's only procedural safeguard, the written notice requirement, would not cause substantial fiscal or administrative concerns. Respondents' interest in detaining Petitioner would not be substantively hindered, fiscally or administratively, by simply providing Petitioner with written notice in accordance with 8 C.F.R. § 212.5(e)(2)(i).

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a sufficient written notice terminating his parole prior to being re-detained.

### D. Immediate Release Is the Appropriate Remedy

Federal district court have broad equitable power to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 692 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. The Court finds that, due to the lack of adequate written notice violating the Petitioner's due process rights, the appropriate remedy in this habeas case is immediate release. *See Munaf v. Geren*, 553 U.S. 674, 693, 128 S.Ct. 2207 (2008) ("Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release." (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, 124 S.Ct. 2633 (2004); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827 (1973)).

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 3) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents shall immediately release Petitioner, specifically no later than **forty-eight (48) hours** from the entry of this Order, under the same conditions of release that were in place before his re-detention on May 29, 2025.

**IT IS FURTHER ORDERED** that Respondents are **RESTRAINED** from re-detaining Petitioner without the adequate written notice in accordance with 8 C.F.R. § 212.5(e)(2)(i).

**IT IS FURTHER ORDERED** that Respondents submit a Status Report to the Court within **three (3) days** of this Order confirming Petitioner's timely release.

**IT IS FURTHER ORDERED** that Petitioner may submit an application for fees and costs pursuant to the EAJA within thirty (30) days of this Order. Respondents may respond to Petitioner's application no later than fourteen (14) days after the application is filed with the Court.

Finally, because the Court is adjudicating Petitioner's Petitioner and granting him relief in this Order, Petitioner's Motion for Temporary Restraining Order (Doc. 11), Motion to Expedite (Doc. 13), and Motion for Hearing (Doc. 14) are **DENIED AS MOOT**.

The Court will issue a separate final judgment but retain jurisdiction to ensure compliance with this Order.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE